**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ACE AMERICAN INSURANCE COMPANY, *et al.*, | § § | |
| Petitioners, | § § | |
| VS. | § § | CIVIL ACTION NO. H-12-442 |
| | § § | |
| DALLAN WALTERS, *et al.*, | § § | |
| Respondents. | § § | |

**MEMORANDUM AND OPINION**

This is a review of the Benefits Review Board's claim determination under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950. The Board affirmed the administrative law judge's decision awarding Dallan Walters compensation for permanent total disability and medical benefits from October 26, 2007 to the present and into the future. Walters's claim arose from a back injury. The compensation awarded corresponded to Walters's average weekly wage of $1,522.23. In this appeal, Walters's former employer, L-3 Communications/Vertex Aerospace (L-3), and its insurance carrier, ACE American Insurance Co., argue that the ALJ and the Board misinterpreted and misapplied the law governing the liability of a second employer for an injury that first arose while the claimant was working for an LHWCA employer. The petitioners claim that Walters's current disability resulted from a second, new injury in 2007, when he was working for Duit Construction in the United States and was not covered by the LHWCA; that the 2007 injury was not caused by the 2005 injury sustained while Walters was working overseas for L-3, which was a LHWCA employer; and that as a result, the Board decision affirming the ALJ's

award of permanent total disability compensation and medical benefits was not supported by substantial evidence or by correct legal principles. The respondents, Walters and the Director of the Office of Workers' Compensation Programs, argue that the Board and the ALJ applied a proper legal standard to the evidence in the record in holding L-3 liable for Walters's disability and that substantial evidence supports that holding.

Based on the briefs, the record, and the applicable law, this court affirms the Board's decision affirming the ALJ's award. The reasons are explained in detail below.

**I.  Background**

The evidence shows that Walters first injured his back on May 29, 2005 while working. His job was performing heavy-wheel maintenance and installing armor on vehicles in Kuwait. The injury happened while Walters was removing a hub from a truck. Walters continued working in the same job in Kuwait on a modified-duty basis until August 17, 2005, when he returned to the United States for treatment for back pain. Dr. Craven diagnosed Walters with disc herniation and degeneration at the L5–S1 vertebrae. On September 9, 2005, Dr. Craven performed a discectomy and fusion surgery.

After receiving a medical release with permanent lifting restrictions of 75 pounds occasionally and 50 pounds frequently, in August 2006, Walters tried to go back to work for the same employer in Kuwait. He was told that no work was available at the time. Walters continued to see Dr. Craven with complaints of back "catches," the term Walters used to describe episodes of pain and soreness in his back and leg that could occur doing everyday activities such as watching television. Dr. Craven did not change Walters's work status or modify the lifting restrictions during this period.

In February 2007, Walters began working with Duit Construction as a supervisor or lead mechanic in field maintenance. He worked between 60 to 84 hours per week. On September 12, 2007, Walters experienced a back "catch" episode. He was working for Duit when it happened, but testified that the work he was doing at the time was not physically difficult. The "catch" happened when Walters rolled over as he was working under a vehicle. On September 17, 2007, Walters went to see Dr. Craven, who placed him on light duty with a ten-pound lifting restriction. Walters worked for Duit until October 25, 2007, when his employment was terminated, in part due to his back problems. He has not been gainfully employed since he left Duit. During that period, he applied for and received full social security disability benefits.

The issue is whether L-3 is liable under the LHWCA for Walters's disability, which began in 2007 while Walters was working for Duit, because Walters had first injured his back and had surgery while working for L-3 in 2005.

## II.    The ALJ and Board Decision and Order

Section 20(a) of the LHWCA, 33 U.S.C. §920(a), gives the claimant a presumption that the disability alleged is causally related to his employment if the claimant meets a *prima facie* burden of proving that he suffered a harm and that an accident occurred or working conditions existed that could have caused the harm alleged. *See, e.g.*, *Gooden v. Dir., Office of Worker's Comp. Programs*, 135 F.3d 1066, 1068 (5th Cir. 1998).[1] The ALJ found that Walters had made the *prima facie*

---

[1] Section 20(a) provides in pertinent part that "[i]n any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary [that] the claim comes within the provisions of this chapter." 33 U.S.C. § 920(a). Courts have read this to mean that there is a presumption that the injury is causally related to the worker's employment if the worker makes a *prima facie* showing of causation. A *prima facie* showing of causation consists of evidence that "(1) an injury was suffered, and (2) the injury occurred in the course of employment or was caused, aggravated, or accelerated by conditions at the

showing and applied the presumption that Walters's current back condition was causally related to the initial 2005 work-related injury. The ALJ found that L-3 had not rebutted the presumption by producing substantial countervailing evidence that the work-related incident had not caused the condition. Alternatively, the ALJ ruled that even assuming that L-3 had rebutted the presumption, Walters had established that his present back condition was causally related to his initial work-related injury. The ALJ found that Walters's employment with Duit from February 25 through October 25, 2007 was suitable alternate employment, and that Walters experienced no loss in wage-earning capacity during this time. The ALJ found that Walters has been totally disabled since October 25, 2007 and awarded the following compensation: temporary total disability from August 17, 2005 through August 10, 2006; permanent total disability from August 11, 2006 through February 24, 2007; and permanent total disability from October 26, 2007 and continuing, as well as medical benefits. On appeal to the Board, L-3 challenged the award only for the time after Walters's employment at Duit ended. The Board affirmed the ALJ's decision, rejecting both sides' contentions of error. This appeal followed.

## III. The Legal Standards

### A. The Standard of Review

A federal court conducts a *de novo* review of the Board's rulings of law. *Pool Co. v. Cooper*, 274 F.3d 173, 177 (5th Cir. 2001) (citations omitted). But the court applies "*Skidmore* deference to the Director's interpretations of the LHWCA. . . . Under this approach, the amount of

---

work place." *Ortco Contractors, Inc. v. Charpentier*, 332 F.3d 283, 287 (5th Cir. 2003). Once an employee makes a *prima facie* case, it is the employer's burden to rebut it by "substantial evidence to the contrary." *Nabors Offshore Drilling Inc. v. Smoot*, 248 F. App'x 573, 575 (5th Cir. 2007).

deference owed the Director's interpretation 'will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *Avondale Indus., Inc. v. Alario*, 355 F.3d 848, 851 (5th Cir. 2003) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944))); *Carey v. Ormet Primary Aluminum Corp.*, 627 F.3d 979, 982 (5th Cir. 2010). On factual questions, the ALJ's findings are "conclusive if supported by substantial evidence in the record considered as a whole." LHWCA § 21(b)(3), 33 U.S.C. § 921(b)(3). The reviewing court cannot decide based on credibility of witnesses giving conflicting testimony or based on an evaluation of the relative weight of conflicting evidence or inferences. *See La. Ins. Guar. Ass'n v. Dir, Office of Workers' Comp. Programs*, 614 F.3d 179, 185 (5th Cir. 2010) ("As for findings of fact, we have repeatedly acknowledged that the ALJ, as sole factfinder, 'is entitled to consider all credibility inferences [and the ALJ's] selection among inferences is conclusive if supported by the evidence and the law.'" (alteration in original) (quoting *Mendoza v. Marine Pers. Co.*, 46 F.3d 498, 500 (5th Cir. 1995))).

      **B.**    **Causation**

The LHWCA provides for compensation to be paid to an employee who suffers an accidental injury or death that arises out of and in the course of employment. 33 U.S.C. §§ 902(2), 903. The test is one of causation in fact — whether the employment caused the injury. *Shell Offshore, Inc. v. Director, Office of Worker's Compensation Programs*, 122 F.3d 312, 316 (5th Cir. 1997); *Bludworth Shipyard, Inc. v. Lira*, 700 F.2d 1046, 1049–50 (5th Cir. 1983). The tort concept of proximate cause is generally not applicable in the LHWCA setting. *Shell Offshore*, 122 F.3d at 316; *Bludworth Shipyard*, 700 F.2d at 1050. Proximate-cause analysis in a typical tort case focuses on

whether a party should be held legally responsible for remote consequences of his acts. The inquiry under the LHWCA is much narrower. The court's sole function is to determine whether the injury "ar[ose] out of" the employment. Once causation in fact is established, with only a few exceptions, the court's function ends. *Bludworth Shipyard*, 700 F.2d at 1050. The allegation of a supervening, independent cause of the claimed injury is one such exception. *Shell Offshore*, 122 F.3d at 316; *Bludworth Shipyard*, 700 F.2d at 1050.

If an employee shows that he was injured in a work-related accident, then he benefits from a presumption that the LHWCA covers his injury. *See* 33 U.S.C. § 920(a). The burden of proof then shifts to the employer to present substantial evidence rebutting the presumption that the claimant's injury was work-related. If the employer successfully rebuts the presumption, the ALJ examines the evidence as a whole to determine whether the injury is work-related. *Shell Offshore*, 122 F.3d at 316.

This case presents the recurring problem of how the LHWCA allocates an employer's liability for a disability resulting from cumulative traumas over time. The specific facts involve an employee who had a nondisabling injury while working for an employer covered by the LHWCA, then became disabled after an injury sustained while working for a different employer not covered by the statute. This circuit has articulated somewhat different standards as to what is a supervening cause that would allow the first employer to escape liability for disability compensation when the subsequent injury occurs either outside employment or during employment for an employer not covered by the LHWCA. *See Bludworth*, 700 F.2d at 1050 (noting the tension between two standards articulated in two Fifth Circuit cases); *see also Atl. Marine, Inc. v. Bruce*, 661 F.2d 898, 901 n.5 (5th Cir. 1981) (same).

The initial supervening-cause standard was stated in *Voris v. Texas Employers Insurance Ass'n*, 190 F.2d 929 (5th Cir. 1951). That case held that a supervening cause was an influence originating entirely outside of employment that overpowered and nullified the initial injury. *Id.* at 934 ("There must, however, under the Act, be some connection between the death [or injury] and the employment, and the causal effect attributable to the employment must not have been overpowered and nullified by influences originating entirely outside the employment."). Subsequently, in *Mississippi Coast Marine v. Bosarge*, 637 F.2d 994 (5th Cir.), *modified on other grounds and reh'g denied*, 657 F.2d 665 (5th Cir. 1981), another panel held — without discussing *Voris* — that a simple "worsening" could give rise to a supervening cause. "A subsequent injury is compensable if it is the direct and natural result of a compensable primary injury, as long as the subsequent progression of the condition is not shown to have been worsened by an independent cause." *Id.* at 1000. In *Shell Offshore*, the court held that because "[t]he rule in this Circuit is that only an *en banc* court can overrule or change what a previous panel has held," the *Voris* standard cannot have "evolved into the second . . . standard stated in *Borsarge*." 122 F.3d at 316; *see also Lake Charles Food Prods., L.L.C. v. Broussard*, 288 F. App'x 949, 951 (5th Cir. 2008) ("*Voris* controls to the extent it conflicts with *Bosarge* on the facts of this case."). In *Shell Offshore*, the court did not need to decide which standard was "the operative one." The court affirmed the award of compensation "because the facts in th[e] record do not meet either standard for supervening cause." *Id.*; *see also Lake Charles*, 288 F. App'x at 951–52 (holding that a May 2004 car wreck was not a "supervening cause" that could cut off the employer's obligation to pay compensation for an October 2003 workplace injury).

The first and more stringent standard holds the first employer liable for the disability unless

7

the first employer shows that the subsequent injury originated entirely outside of the first employment and effectively overpowered and nullified the initial injury. *Voris*, 190 F.2d at 934. If the first injury was work-related and the second injury exacerbated or aggravated it but did not overpower and nullify it, the first employer is liable. *Id*. The second and less demanding standard would allow the first employer to escape liability if the subsequent event merely "worsens" the initial injury. *Bosarge,* 637 F.2d at 1000.

The evidence in the record is examined under these standards.

**III.      Analysis**

L-3 relies heavily on deposition testimony from Dr. Craven, Walters's treating physician and the only medical expert who testified before the ALJ. Dr. Cravens testified in his deposition as follows:

> Q. (by Mr. Flicker) The fact is that you dropped him from 75 pounds in August of '06?
>
> A. (by Dr. Craven) Right, to 50 pounds.
>
> Q. I guess you said you dropped him to 50 pounds in the Wal-Mart incident, and then you dropped him to 10 pounds. But was that 10 pounds based on an FCE?
>
> A. No. That was based on, you know, essentially <u>a new injury or a reaggravation</u>, you know, that occurred on September —
>
> Q. September 12 or 10 or whatever it is?
>
> A. Yeah. So that was him coming to the office, you know, on September 17th with a five-day history of, you know, tweaking his back at work, having back and leg pain, you know. At this point, let's, like I said, put you on light duty, give you some time, give you some meds, hopefully you'll be better, comes back three weeks later not better, recommend MRI.
>
>         . . . .

> Q. (by Mr. Flicker) Okay. But as far as you saw, he was on the job stateside September of 2007, while he's on the job in the course of his employment doing his job functions he has something happen to him, and as a consequence of that, you find that he has significantly increased pain and significantly increased limitations, correct?
>
> A. (by Dr. Craven) Correct.
>
> Q. Again, again in the normal course you would find that to be a partially related <u>new event for a new injury</u> for this guy, wouldn't you?
>
> A. Well, again, that was my impression, you know.
>
> . . . .
>
> Q. (by Mr. Flicker) If I said that under the Federal law an exacerbation or an aggravation of an old injury is considered a new injury or a flare-up of pain is considered a new injury, if you accept that as the state or federal — of this federal law we are dealing with here, would you say that what happened to him <u>qualifies as a new injury</u>?
>
> A. (by Dr. Craven) Well, I — you know, again, <u>that was my impression</u>.
>
> . . . .
>
> Q. (by Mr. Flicker) But go ahead, how could it not be?
>
> A. (by Dr. Craven) Again, I don't know your guidelines exactly, but an aggravation based on what you read earlier sounds like an aggravation is a new injury. So kind of based on what you read, <u>it sounds like a new injury</u>, you know.

(Docket Entry No. 19, at 17–18 (emphasis in original) (citations omitted)). L-3 argues that, in light of this testimony, it was "completely nonsensical and without support in the evidentiary record" to hold that Walters did not suffer a "new injury" on September 12, 2007, while working for a stateside employer, causing his disability and relieving L-3 of statutory responsibility for disability compensation. (*Id.* at 17).

Dr. Craven did not, however, testify that the 2005 injury Walters received (while working

9

for L-3) was irrelevant to the disability effect of the second injury. Dr. Craven testified that, given way L-3's lawyer defined "new injury," the 2007 injury Walters received (while working for Duit), was a "new injury." The definition of a "new injury" included an exacerbation or aggravation of an existing injury. The case law is clear that a second injury that exacerbates or aggravates an earlier injury need not be a supervening cause of disability resulting from the second injury. *See Voris*, 90 F.2d at 934. The ALJ found that the first injury was caused by a work-related event during the period Walters worked for L-3 and that, even assuming L-3 had rebutted the presumption that Walters's later back condition was causally related to that first injury, Walters had established the causal relationship. Substantial evidence in the record shows that the initial, 2005 injury resulted in back surgery. Even before Walters had a back "catch" when he rolled over under the vehicle while working for Duit in 2007, he was experiencing back "catches" — episodes of pain — triggered by such innocuous activities as sitting, walking, or watching television. Before the 2007 incident, Walters had continued to seek medical treatment for his episodes of back pain — episodes that followed, and were caused by, the 2005 injury. Rolling over under the vehicle in 2007 did not overpower and nullify the 2005 work-related back injury. This finding is supported by substantial evidence.

L-3's argument would find more support in both the record and the law under the "worsening" standard used in *Bosarge*, 637 F.2d at 1000. But the Fifth Circuit has held that similar aggravation or exacerbation of an existing injury does not qualify as the type of "worsening" that would give rise to a supervening cause. *Shell Offshore*, 122 F.3d at 316. In *Shell Offshore*, the claimant had a back injury but was not disabled. He later injured his back again while assembling a swing set. The claimant did not need to seek medical aid until after the second injury. Shell

claimed that, under the "worsening" standard, it should not be held liable for the disability following the second injury. The *Shell Offshore* court held that even with the evidence that no medical attention was required until after the swing-set injury, that injury was not a supervening cause of the disability. The evidence showed that the claimant was having trouble completing certain tasks even before he assembled the swing set. The evidence also showed that assembling the swing set was not an abnormal activity for one with back pain, because it was light and required little exertion. *Id*.

Walters, unlike the claimant in *Shell Offshore*, sought medical aid for back problems after the first injury and before the second. The evidence also showed that Walters was injured while rolling over, a normal act that did not require either heavy exertion or lifting. The record supports the ALJ's decision that, at most, the 2007 injury exacerbated or aggravated the 2005 injury; the second injury did not "worsen" Walters's condition. The 2007 injury was not a supervening or intervening cause of the disability under *Voris* or *Shell Offshore*. L-3 was properly held liable for the compensation award.

## IV. Conclusion

The Board's decision is affirmed. This case is dismissed, with prejudice.

SIGNED on June 20, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

11